# In the United States Court of Federal Claims

|  |  |
|---|---|
| **GOODEARTH DISTRIBUTION, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | No. 23-339<br>(Filed: January 23, 2024)<br><br>Not for Publication |

*James S. Phillips* and *Julie M. Nichols*, Roeder, Cochran, Phillips, PLLC, McLean, Va., for Plaintiff.

*Andrew Hunter*, Trial Attorney, *William J. Grimaldi*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge.*

This case arises from a contract dispute between GoodEarth Distribution, LLC and the United States Postal Service (USPS). GoodEarth alleges that the USPS failed to pay for nitrile gloves GoodEarth delivered to the USPS in bulk at the height of the COVID-19 pandemic. Rather than pay GoodEarth, the USPS erroneously sent payments to a bank account in another party's name, pursuant to fraudulent transfer instructions submitted by an unknown third-party who apparently stole the money. The USPS maintains it performed satisfactorily by making the erroneous payments because: (1) the contract put the onus of submitting electronic payment instructions on GoodEarth and (2) the fraudulent transfer instructions originated from an appropriate GoodEarth email account.

GoodEarth alleges four counts in the Complaint. Count I is for breach of contract and seeks a monetary judgment of $609,770. Compl. ¶ 76 (ECF 1). Count II is for breach of a duty to cooperate and seeks a monetary judgment of $70,886.75. Compl. ¶ 84. Count III is for Prompt Payment Act interest under Count I. Compl. ¶ 88. Count IV seeks a declaratory judgment for de facto debarment. Compl. ¶ 97. Pending before the Court is the Defendant's Motion to Dismiss all four counts of the Complaint pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims (ECF 7). For the reasons

set forth below, the Defendant's Motion to Dismiss is **DENIED** with respect to Counts I and III and **GRANTED** with respect to Counts II and IV.

## BACKGROUND[1]

In 2020 and 2021, the USPS and GoodEarth entered into a series of contracts to provide supplies related to the agency's efforts to fight the COVID-19 pandemic. Compl. ¶¶ 5-6. These contracts included contract number 3CMROP-21-B-0013 (Contract 0013) and contract number 3CMROP-21-B-0014 (Contract 0014). Compl. ¶¶ 20, 24. Under both contracts, GoodEarth had an obligation to deliver nitrile gloves to the USPS. Compl. ¶¶ 21, 25. Upon receipt of proper invoices, the USPS was obligated to make payments to GoodEarth within thirty days. Compl. ¶ 9.

Under Contracts 0013 and 0014, GoodEarth did indeed fully perform and deliver the required supplies and products to the USPS. Compl. ¶¶ 23, 27. Consequently, the Government was obligated to make payments to GoodEarth in the amounts of $491,350 and $578,770, respectively, upon receipt of proper invoices. *See* Compl. ¶¶ 21, 27. Under the parties' initial contract, the parties agreed that "[w]hen the [Electronic Funds Transfer (EFT)] payment method is selected, the Postal Service will provide the supplier with Form 3881, Supplier's Electronic Funds Transfer Enrollment Form, at contract award. The supplier must complete the form and submit it to the designated Postal Accounting Service Center to ensure the proper routing of payments." Compl. ¶ 13. GoodEarth submitted Form 3881 shortly following the award of the initial contract. Compl. ¶ 15. Per GoodEarth's instructions, payment was to be made by EFT to GoodEarth's JP Morgan Chase bank account. Compl. at Preamble, ¶ 16.

Following performance of Contracts 0013 and 0014, GoodEarth issued invoices to the USPS. Compl. ¶¶ 23, 27. However, despite submitting proper invoices, GoodEarth alleges that it has yet to receive full payment from the USPS under both contracts. Compl. ¶¶ 23, 27. While the USPS made payment on two invoices under Contract 0013, payment on the final invoice for Contract 0013, for the amount of $31,000, remains unpaid. Compl. ¶ 23. The sole invoice for Contract 0014, for the amount of $578,770, also remains unpaid. Compl. ¶ 27.

According to GoodEarth, the reason for the USPS's non-payment was due to a third-party fraud event. Compl. ¶¶ 28-62. Specifically, unbeknownst to GoodEarth, a malicious third-party actor unrelated and unconnected to GoodEarth (the fraudulent actor or fraudster) breached the company's email security and sent emails seemingly authored by GoodEarth personnel to the USPS. Compl. ¶¶ 30-38. These communications instructed the USPS to substitute its Chase bank account on record for an account at another bank, Wells Fargo, for payments due to GoodEarth on its USPS contracts. Compl. ¶¶ 30-38. The bank account at Wells Fargo was in the name of a construction and supply company with no

---

[1] For purposes of the Motion to Dismiss, the Court accepts the allegations made by GoodEarth in the Complaint as true.

connection to GoodEarth. Compl. ¶¶ 30-40. In order to effectuate payment, the third-party fraudulent actor submitted a forged Form 3881 to the USPS. Compl. ¶ 35.

Despite several red flags, including procedural oversights and a forged signature that did not match the signature on file, the USPS approved this change of bank accounts from GoodEarth to a third-party construction and supply company with whom there was no contractual nexus. Compl. ¶¶ 30-40. Ultimately, on April 16 and April 27, 2021, the USPS transferred $578,770 and $31,000 respectively to the unknown third-party's Wells Fargo bank account. Compl. ¶ 41. GoodEarth was unaware of these payments at the time. Compl. ¶ 42.

As GoodEarth sought payment for its unpaid invoices, it learned in June 2021 that funds intended to pay GoodEarth had been directed to the Wells Fargo bank account. Compl. ¶¶ 42-43. GoodEarth immediately informed the USPS of the misdirection and error and sought to correct the bank information. Compl. ¶¶ 44-46.

In response, the Contracting Officer issued a letter to GoodEarth in June 2021, accusing the company of seeking to defraud the Government. Compl. ¶ 49. The USPS subsequently ceased soliciting quotations from GoodEarth and declined to consider offers submitted by GoodEarth to the USPS to supply products. Compl. ¶ 57. Although GoodEarth reached out to the Contracting Officer and the USPS purchasing representative with multiple offers to supply nitrile gloves or disposable wipes to the USPS at below market prices, the Contracting Officer did not respond to these communications and the USPS purchasing representative instructed GoodEarth to cease contacting her. Compl. ¶ 58. According to GoodEarth, in one instance, another supplier acquired nitrile gloves from GoodEarth and re-sold the inventory to the USPS at a higher price than the price GoodEarth had quoted to the USPS. Compl. ¶ 59. Despite the USPS's apparent unwillingness to procure any supplies from GoodEarth, at no point has the USPS issued a formal negative past performance reference or proposed GoodEarth for debarment. Compl. ¶¶ 60-62.

In December 2021, GoodEarth submitted a certified claim seeking payment of the funds which had erroneously been sent to the fraudster, in addition to interest and incurred costs associated with responding to the Contracting Officer's June 2021 letter (the CDA claim). Compl. ¶ 63. On March 11, 2022, the Contracting Officer issued a final decision (COFD) denying GoodEarth's CDA claim in its entirety. Compl. ¶ 65.

GoodEarth's Complaint asserts that this Court has jurisdiction "with respect to GoodEarth's monetary claim … based on the Contract Disputes Act, 41 U.S.C. § 7104." Compl. ¶ 3. The Complaint asserts that this Court has jurisdiction "with respect to GoodEarth's request for declaratory relief … based on the Contract Disputes Act and the Tucker Act, 28 U.S.C. § 1491(a)(2) and (b)(2)." *Id.*

3

## LEGAL STANDARDS

Defendant moves to dismiss this suit pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims.[2] Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction. This Court's jurisdiction is dependent on an unequivocal waiver of sovereign immunity by the United States. *United States v. Testan*, 424 U.S. 392, 399 (1976). The plaintiff bears the burden to demonstrate that jurisdiction is proper by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss under Rule 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citation omitted). Courts are obligated to enforce jurisdictional rules *sua sponte. Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023). If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Rule 12(h)(3); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Rule 12(b)(6) permits the Court to dismiss an action for failure to state a claim upon which relief may be granted. Dismissal is proper under Rule 12(b)(6) "when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021). The Court "must accept as true all the factual allegations in the complaint and … must indulge all reasonable inferences in favor of the non-movant." *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274 (Fed. Cir. 2023) (citation omitted). To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (interpreting Federal Rule of Civil Procedure 12(b)(6)) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## DISCUSSION

The Defendant makes three arguments in its Motion to Dismiss (MTD). First, that GoodEarth fails to state a claim for breach of contract. MTD at 5-11. Second, that GoodEarth fails to state a claim for breach of any duty to cooperate or the duty of good faith and fair dealing. MTD at 12-17. Third, that GoodEarth's de facto debarment claim fails because it alleges no case or controversy, no live dispute, and because its own allegations contradict its claim. MTD at 17-20.

### I. Breach of Contract (Count I) & Prompt Payment Act Interest (Count III)

The Government argues that GoodEarth's complaint fails to state a breach of contract claim and should therefore be dismissed pursuant to Rule 12(b)(6). MTD at 5-11. To have a valid claim for breach of contract, the Plaintiff must show: (1) a valid contract

---

[2] Court of Federal Claims Rule 12(b)(6) is the same as Federal Rule of Civil Procedure 12(b)(6). *Compare* RCFC 12:(b)(6) *with* Fed. R. Civ. P. 12(b)(6).

between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *Peanut Wagon, Inc. v. United States*, 167 Fed. Cl. 577, 602 (2023) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)).

The Court finds that the Complaint adequately alleges these four elements to establish breach of contract claims under two contracts. First, the Complaint alleges—and the Government does not dispute—that two valid contracts existed between the parties (Contract 0013 and Contract 0014). Compl. ¶¶ 20, 24. Second, the Complaint alleges that each of these two contracts contained a duty requiring the Government to pay GoodEarth. Compl. ¶¶ 21, 27. Third, the Complaint alleges a breach of the Government's duty to pay GoodEarth under both contracts, *i.e.,* money owed was not paid to GoodEarth. Compl. ¶¶ 23, 27. Lastly, the Complaint alleges damages in the total amount of $609,770, representing the $31,000.00 alleged breach under Contract 0013 and the $578,770.00 alleged breach under Contract 0014. Compl. ¶¶ 23, 27, and 76. Collectively, these facts as pled in Count I of the Complaint indicate that Plaintiff properly alleged a breach of contract claim.

The Government argues that because it sent money to an unknown third-party, it was alleviated from its principal duty under the contracts, *i.e.*, to pay the contractor. Specifically, the USPS argues that because GoodEarth's initial contract contained language requiring the use of "Form 3881," a form that the USPS mandated to facilitate transfer of funds from the USPS to GoodEarth, GoodEarth was on notice of the USPS's intended method of executing payment and bore responsibility for completing the form and any errors that affected the routing of payments. MTD at 6. Because the USPS complied with the latest Form 3881 on file, the USPS thus discharged its duty to pay the contractor when it sent money via the designated account, even though the funds went to a third-party fraudster instead of the contractor who performed the contract. *See* MTD at 6-7.

In essence, the USPS's reasoning here encourages the Court to turn the USPS's principal duty on its head by making payment a duty of the contractor rather than a duty of the Government. This argument fails because it focuses on the mechanism for implementing the duty to pay the contractor rather than on the duty itself. The duty to pay a contractor is the principal duty the Government owes any contractor under a government contract and the principal duty it owed GoodEarth under the contracts at issue in this litigation.

Further, if anything, contrary to what the Government argues, Form 3881 created an obligation for the USPS to take measures to ensure that it remitted payments to the proper bank account. Specifically, Form 3881 requires inclusion of a canceled check or the signature of a bank representative from the bank of the bank account. Appx. 23. Presumably, the purpose of collecting this information was to ensure the USPS could verify that it was sending payments to proper recipients and protect itself from the very issue that gives rise to this litigation, erroneous payment. To the extent that facts not included in the Complaint indicate that the onus to ensure proper payment was on the contractor, these are

issues that can be addressed later in the litigation, not via a motion to dismiss in which the only question before the Court is whether the facts as alleged indicate a breach of contract claim. For the reasons discussed above, GoodEarth sufficiently pled breach of contract and dismissal under Rule 12(b)(6) is therefore inappropriate.

The Government has not specifically requested or provided argument as to why the prompt payment act interest count (Count III), which stems from the alleged breach of contract, should be dismissed. In the absence of the Government advancing any argument for dismissal specific to the Prompt Payment Act interest, and because the Complaint demonstrates a logical nexus between the interest it seeks and the claimed damages under Count I, the Court finds that GoodEarth has sufficiently pled Count III, interest under the Prompt Payment Act.

## II. Breach of Duty to Cooperate to Resolve Contract Issues; Professional Fees Incurred at the Contracting Officer's Direction (Count II)

Pursuant to Rule 12(b)(6), the Government moves to dismiss Count II of the Complaint. MTD at 12-17. Count II alleges a breach of a duty to cooperate to resolve contract issues and seeks payment for professional services related to GoodEarth's attempt to prove its innocence following accusations of involvement in a fraudulent email scheme. Compl. ¶¶ 77-84. GoodEarth clarified in its response brief that it considers this count to include both an implied duty of good faith and fair dealing and a fiduciary duty arising from the contracts at issue and the Contract Disputes Act. MTD Resp. at 9-10 (ECF 12). Specifically, GoodEarth alleges that the Government violated these duties by (1) initially blaming GoodEarth for the fraud; (2) refusing to discuss the issue with GoodEarth; (3) assigning responsibility for the loss to GoodEarth; and (4) failing to issue duplicate payment. *Id.* at 12.

The implied duty of good faith and fair dealing "requires a party to not interfere with another party's rights under the contract." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010). The implied duty to cooperate is encompassed within the duty of good faith and fair dealing. *See Malone v. United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988) ("'[S]ubterfuges and evasions violate the obligation of good faith,' as does lack of diligence and interference with or failure to cooperate in the other party's performance." (quoting Restatement (Second) of Contracts § 205 cmt. d (1981))).

Even under the lenient standard under which the Court evaluates motions to dismiss, the Court finds that GoodEarth has failed to allege facts that, if proven, would entitle it to the relief sought. While a plaintiff need not demonstrate ultimate success on the merits to survive a motion to dismiss, the allegations of fact in a complaint must plausibly support the claim. *See Twombly,* 550 U.S. at 560-63 (discussing the requirement of plausibility). For each of the arguments raised under Count II, GoodEarth fails to meet this burden.

First, with respect to GoodEarth's argument that the Government breached a duty it owed GoodEarth when it initially blamed GoodEarth for the fraudster's conduct in the June

14 letter, the Court does not find that the contents of that letter were inappropriate or in breach of a duty owed to GoodEarth. The June 14 letter asserted the Government's concern that GoodEarth might be improperly attempting to obtain double payment. Appx. 30-31. The letter requested GoodEarth's response to the issues it raised based on the facts the Government had at the time it sent the letter. *Id.* The Government's issuance of this letter did not interfere with GoodEarth's rights under the contract. *Id.* In fact, the letter appears to be a proactive step to try to get to the bottom of suspicious conduct. It is the very sort of initiative that GoodEarth argues that the Government should have done sooner to prevent the erroneous payments.

Second, GoodEarth's allegation that the USPS refused to discuss the matter further with GoodEarth after the June 14 letter, Compl. ¶ 81, is contradicted by GoodEarth's own allegations and documents incorporated into the Complaint. Subsequent email correspondence with the USPS, admitted in the Complaint, *see, e.g.*, Compl. ¶¶ 81-82, along with the CDA claim and COFD, indicate the agency's agreement with GoodEarth that a third-party impostor appeared to have gained control of GoodEarth's systems to perpetrate the fraud. This correspondence and the CDA claim process constitute further discussion of GoodEarth's concerns. GoodEarth's allegation that the USPS violated the duty to cooperate by not communicating with it are not supported by the facts and documents incorporated into the Complaint.

With respect to GoodEarth's third and fourth arguments, no breach of the duty of good faith and fair dealing can be based on the USPS's final decision to deny GoodEarth's CDA claim. As described above, the agency communicated with GoodEarth about this issue, and its COFD indicates it considered the evidence presented by GoodEarth. *See* Appx. 61-64. The COFD indicates that the Contracting Officer concluded that the cause of the fraud was GoodEarth's fault, Appx. 63-64, a conclusion that GoodEarth contests. However, as the Government argues, the fact that the USPS reached a different conclusion about which party should bear the loss connected with this event does not state a breach of the duty of good faith and fair dealing. *Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 600-1 (2013) (rejecting plaintiff's "failure-to-agree-with-plaintiff theory of breach of the implied covenant of good faith and fair dealing."). This same conclusion follows for the agency's denial of GoodEarth's request for it to make duplicate payments. Failure to pay money a plaintiff alleges was owed in a contract dispute does not constitute a breach of the duty of good faith and fair dealing. *Dotcom*, 112 Fed. Cl. at 600 ("Every breach of contract suit in this court involves a plaintiff who alleges that a defendant owes the plaintiff money. If withholding … money by itself was enough to establish a breach of the implied covenant of good faith and fair dealing, every breach of contract would also be a breach of the implied covenant.").

More generally, as the Government has argued, the facts described in the Complaint bear no resemblance to the types of cases that are typical of a violation of the duty of good faith and fair dealing case, such as bait and switch cases, cases involving subterfuge and evasive behavior, or cases involving a government lack of diligence that obstructs a

7

contractor from performance. *See Precision Pine*, 596 F.3d at 829, 31 (recognizing that an implied duty of good faith and fair dealing "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions"); *Malone*, 849 F.2d at 1445. Typically, when the Government has been found liable for a breach of the implied duty of good faith and fair dealing, the case "involve[s] some variation on the old bait-and-switch" in which "the government eliminates or rescinds [a] contractual provision or benefit through a subsequent action directed at the existing contract." *Precision Pine*, 596 F.3d. at 829.

Similarly, with respect to the breach of fiduciary duty argument, the Court agrees with the Government that the facts as stated in the Complaint do not support an alleged breach of a separate fiduciary duty but are merely a rehashing of the principal contractual duty at issue, a duty to pay the contractor. Further, as the Government argues, and GoodEarth does not dispute, the contract makes no provision for payment of legal or investigative costs in a situation such as this, and GoodEarth has failed to identify any source of law which does. To the extent that GoodEarth develops facts during discovery that support this count of the Complaint, such as evidence that the Government acted in bad faith, GoodEarth may seek leave to amend its complaint consistent with the rules of the Court. In sum, for the reason explained above, pursuant to Rule 12(b)(6), the Court dismisses Count II of the Complaint without prejudice.

### III. Declaratory Judgment for De Facto Debarment (Count IV)

In Count IV, Plaintiff alleges it is the victim of de facto debarment and seeks declaratory relief. De facto debarment occurs when an agency bars a contractor from competing for government contracts without following applicable debarment procedures. *See TLT Constr. Corp. v. United States*, 50 Fed. Cl. 212, 215 (2001). A de facto debarment claim may be established (1) by an agency's statement that it will not award a contractor future contracts or (2) by an agency's conduct demonstrating that it will not award a contractor future contracts. *Id*. at 215-16 (citing *CRC Marine Serv., Inc. v. United States,* 41 Fed. Cl. 66, 84 (1998)); *see also Myers & Myers, Inc. v. United States Postal Servs.*, 527 F.2d 1252, 1254, 1259-60 (2nd Cir. 1975) (finding the pleadings supported de facto debarment on a motion to dismiss when the USPS refused to award six delivery contracts because the USPS suspected the contractor had filed a "fraudulent" cost statement but had not provided the contractor with notice of the accusation and an opportunity to respond). Notably, in this Court, de facto debarment is typically brought in the form of a post-award bid protest. *See, e.g., Sims v. United States*, 125 Fed. Cl. 119 (2016); *TLT Constr. Corp.*, 50 Fed. Cl. 212. In fact, Plaintiff only cites to post-award bid protest actions in its response brief. *See* MTD Resp. at 14 (citing *Sims*, 125 Fed. Cl. 119 and *TLT Constr. Corp.*, 50 Fed. Cl. 212).

In this case, the Government seeks to dismiss GoodEarth's de facto debarment allegations under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12 (b)(6) for failure to state a claim. MTD at 17-20. While the Government raises both grounds

8

for dismissal, the Government's argument focuses on the failure to state a claim ground. *See id*.[3] Plaintiff responded to the Government's argument concerning the perceived failure to state a claim but did not offer argument regarding why it believes this Court has jurisdiction to provide declaratory relief for its alleged de facto debarment. *See* MTD Resp. at 7, 14-15. Thus, the sole support for Plaintiff's contention that this Court may provide the declaratory relief requested in Count IV of the Complaint is found in one sentence from the Complaint, where Plaintiff asserts that this Court has jurisdiction with respect to GoodEarth's request for declaratory relief for de facto debarment "based on the Contract Disputes Act [(41 U.S.C. § 7104)] and the Tucker Act, 28 U.S.C. § 1491(a)(2) and (b)(2)." Compl. ¶ 3.[4] For the reasons described herein, this conclusory statement alone is insufficient to meet Plaintiff's burden in demonstrating subject matter jurisdiction.

"[S]ubject matter jurisdiction addresses the question whether a federal court may grant relief to *any* plaintiff given the claim asserted." *Rent Stabilization Ass'n of New York v. Dinkins*, 5 F.3d 591, 594 n.2 (2d Cir. 1993) (citations omitted). This Court, like all federal courts, is a court of limited jurisdiction; its jurisdiction is generally defined by the Tucker Act. 28 U.S.C. § 1491; *Bibbs v. United States*, 230 F.3d 1378 (Fed. Cir. 2000). This Court does not have general authority to issue injunctive relief. *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (noting the Tucker Act "has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States."); *see also United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011) (noting this Court "has no general power to provide equitable relief against the Government or its officers[.]"); *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017) (noting the Tucker Act "does not generally confer jurisdiction for actions seeking declaratory or injunctive relief.").

This Court "may award equitable or other nonmonetary relief in Tucker Act cases in only three statutorily defined circumstances: (1) in bid protest actions brought pursuant to 28 U.S.C. § 1491(b); (2) as 'incident of and collateral to' a monetary judgment, as set out in the first two sentences of 28 U.S.C. § 1491(a)(2); and (3) for certain types of nonmonetary CDA claims, as described in the last sentence of § 1491(a)(2)." *Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 47 (2021). GoodEarth's conclusory statement in its Complaint seeking a declaratory judgment for de facto debarment attempts

---

[3] Specifically, the Government raises three arguments as to why the Complaint does not support allegations of de facto debarment. *See* MTD at 17-20. First, the Government argues there is no longer a live dispute since the USPS issued a COFD that moots the alleged debarment issues. Second, the USPS argues that GoodEarth could not by definition be debarred because debarment procedures were not initiated and GoodEarth has not been placed on the government website for excluded parties (SAM.gov). Third, the USPS argues that its decision to cease soliciting quotations from GoodEarth and the USPS's rejection of GoodEarth's direct offers has a "benign explanation of which GoodEarth is well-aware."

[4] While Paragraph 3 of the Complaint cites to both 28 U.S.C. §§ 1491(a)(2) and (b)(2) as a basis for jurisdiction for the declaratory judgment, the section of the Complaint addressing Count IV (Declaratory Judgment), only cites to 28 U.S.C § 1491(a)(2).

to invoke the Court's jurisdiction under both §§ 1491(a) and (b). *See* Compl. ¶ 3 (citing 28 U.S.C § 1491 (b)(2), 28 U.S.C § 1491(a)(2), and 41 U.S.C. § 7104). However, as explained in more detail below, GoodEarth's allegations do not fit into these narrow categories necessary to invoke the Court's Tucker Act jurisdiction for declaratory relief.

### A. GoodEarth Has Not Filed a Bid Protest

The Tucker Act provides this Court with "jurisdiction to render judgment on an action by an interested party objecting to ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court has equitable powers in the context of bid protests. Specifically, this Court may provide "any relief that the court considers proper, including declaratory and injunctive relief" in the context of resolving bid protests. 28 U.S.C. § 1491(b)(2) (emphasis added). "A complaint 'raises a question within the court's subject matter jurisdiction as long as the asserted basis of jurisdiction is not pretextual, *i.e.*, as long as the jurisdictional ground asserted in the complaint,' does not 'appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous,'." *Superior Waste Mgmt. LLC v. United States*, No. 23-1319C, 2024 WL 101866, at *6 (Fed. Cl. Jan. 8, 2024) (citations omitted).

Because the Complaint cannot be reasonably construed as a bid protest brought pursuant to § 1491(b)(1), invoking the Court's equitable power for bid protests under § 1491(b)(2) is inappropriate. Procedurally, this Court has rules for filing bid protests. *See* Appendix C of the Rules of the Court of Federal Claims. The Complaint has not been filed as a bid protest pursuant to these rules, such as compliance with the pre-filing notice requirements of the Court or even proper labeling of the action as a bid protest. Substantively, the Complaint cannot be reasonably construed as a bid protest because the Complaint lacks necessary elements of a bid protest, including identification of a protested contract, identification of an awardee, and an explanation as to how Plaintiff is an "interested party" within the meaning of § 1491(b)(1) to a contract award that it did identify or even allege that it submitted a bid that was rejected. *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023) (interpreting an "interested party" as an "actual or prospective bidder[ ] or offeror[ ] whose direct economic interest would be affected by the award of the contract or by failure to award the contract.") (citations omitted); *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307-08 (Fed. Cir. 2006) (finding a prospective contractor that did not submit a bid was not an "interested party" within the meaning of 28 U.S.C. § 1491(b)(1)). Taken together, the lack of compliance with the Court's rules for filing bid protests and the failure to meet the minimum pleading requirements for a bid protest suggest that Plaintiff's attempt to invoke the Court's equitable power under § 1491(b) for resolving a bid protest is pretextual, *i.e.*, Plaintiff apparently cited this statute solely for the purpose of invoking equitable powers reserved for bid protests even though

Plaintiff made no attempt to file a bid protest. As such, the Court finds § 1491(b) is inapplicable to the allegations in the Complaint as a basis for the declaratory relief GoodEarth seeks.

### B. GoodEarth's Declaratory Relief Is Not "Incident of and Collateral to" a Monetary Judgment

In the context of contract claims, this Court may provide equitable relief under 28 U.S.C. § 1491(a)(2) that is "incident of and collateral to" a monetary judgment ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."). The Federal Circuit has emphasized that any equitable relief pursuant to § 1491(a)(2) must be tied to, and in support of, a money judgment. *See, e.g.*, *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (finding equitable relief under § 1492(a)(2) must be "'an incident of and collateral to' a money judgment."). In *James*, the Federal Circuit summarized the statute's requirement succinctly: "Stated another way, the Court of Federal Claims has no power 'to grant affirmative nonmonetary relief unless it is tied and subordinate to a money judgment.'" *Id.* (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)), *cited in Shelden v. United States*, 742 F. App'x 496, 502 (Fed. Cir. 2018) (per curiam).

Here, Plaintiff alleges that the "CDA and the Tucker Act authorize the issuance of a declaratory judgment to 'provide an entire remedy and complete the relief' incident or [collateral] to the Court's judgment on a matter within the Court's jurisdiction. *See* 28 U.S.C. § 1491(a)(2)." Compl. ¶ 90. Plaintiff then alleges that the Government will not consider Plaintiff for "future contract awards for which GoodEarth is eligible." Compl. ¶ 96. There is no explanation offered in the Complaint or in Plaintiff's motion as to why the alleged de facto debarment is tied to and subordinate to the potential monetary judgment for breach of contract. Put differently, the declaratory relief relates to an entirely different harm, de facto debarment, than the monetary claim for breach of contract. The breach of contract involves a failure to pay for work already performed while the de facto debarment deals with future work not awarded. As such, the alleged failure to receive future work cannot be reasonably considered "incident of and collateral to" a potential monetary judgment for breach of contract as required by 28 U.S.C. § 1491(a)(2) to invoke the Court's equitable powers.

In sum, for the reasons explained above, the Court finds that GoodEarth failed to meet its burden, by a preponderance of the evidence, to demonstrate that jurisdiction for the declaratory relief requested for the alleged de facto debarment (Count IV) is proper. Accordingly, the Court dismisses Count IV of the Complaint without prejudice.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss is **DENIED** with respect to Counts I and III of the Complaint and **GRANTED** with respect to Count II and IV of the Complaint.

**IT IS SO ORDERED.**

*[Signature]*

_____
PHILIP S. HADJI
Judge